**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

AFSHIN BAHRAMPOUR,              *

                                *

          Plaintiff,         *

      v.                   *    Civil Action No. 1:21-cv-02412-GLR

                                *

NATIONAL SECURITY AGENCY,   *

                                *

          Defendant.       *

                          ********

**MEMORANDUM OF LAW IN SUPPORT OF NATIONAL SECURITY AGENCY'S**
**MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendant National Security Agency ("NSA"), by and through Erek L. Barron, United States Attorney for the District of Maryland, and Kimberly S. Phillips, Assistant United States Attorney for said District, respectfully submits this memorandum in support of its Motion to Dismiss or, in the Alternative, for Summary Judgment, and in support thereof, states as follows:

## INTRODUCTION

In this *pro se* action, Plaintiff Afshin Bahrampour alleges that NSA improperly withheld records responsive to two Freedom of Information Act ("FOIA") requests.  (ECF No. 4 ("Am. Compl.") at 2, 8).  Plaintiff seeks injunctive relief in the form of an order directing NSA to produce responsive records he believes were improperly withheld.  (*Id*. at 11).

With respect to his second request, NSA can find no record of this purported request and therefore Plaintiff has failed to exhaust his administrative remedies as to this request and Plaintiff's claims related to this request should be dismissed.  As to his first request, NSA properly responded that it could neither confirm nor deny the existence of responsive records pursuant to the FOIA Exemptions 1 and 3.  Accordingly, Plaintiff cannot demonstrate that he is entitled to any relief under the FOIA, and NSA is entitled to summary judgment in its favor.

## BACKGROUND

### A.  NSA'S ORIGIN AND MISSIONS.

NSA was established by Presidential Directive in October 1952 as a separately organized agency within the Department of Defense ("DoD") under the direction, authority, and control of the Secretary of Defense.  (*See* Declaration of Linda M. Kiyosaki dated April 25, 2022 ¶ 5, attached hereto as **Exhibit 1**).  NSA has two primary missions: (1) to collect, process, analyze, produce, and disseminate SIGINT information for foreign intelligence and counterintelligence purposes to provide support for national and departmental requirements and for conducting military operations; and (2) to conduct information assurance/cybersecurity activities. SIGINT involves collecting foreign intelligence from communications and information systems, including foreign communications, radar and other electronic systems.  (*Id.*)  NSA has developed a sophisticated worldwide SIGINT collection network that acquires foreign signals.  (*Id.* ¶ 6).  In performing its SIGINT mission, NSA exploits foreign signals to obtain intelligence information necessary to the national defense, national security, and/or the conduct of foreign affairs.  (*Id.*) The technological infrastructure that supports NSA's SIGINT collection network has taken years to develop at a cost of billions of dollars and significant human effort.  (*Id.*)  It relies on sophisticated collection and processing technologies designed to keep pace with challenging new technological developments.  (*Id.*)

### B.  IMPORTANCE OF SIGINT TO THE NATIONAL SECURITY.

There are two primary reasons for gathering and analyzing intelligence information.  (*Id.* ¶ 7).  The first, and most important, is to gain the information required to direct U.S. resources as necessary for the national security of the United States.  (*Id.*)  SIGINT information provided by NSA is routinely distributed to a wide variety of senior Government officials, including the President, the President's National Security Advisor, the Director of National

Intelligence, the Secretaries of Defense, State, Treasury, and Commerce, U.S. ambassadors serving in posts abroad, the Joint Chiefs of Staff, and the Unified and Specified Commanders. (*Id*.)  In addition, SIGINT information is disseminated to numerous agencies and departments including, among others, the Central Intelligence Agency ("CIA"), the Federal Bureau of Investigation ("FBI"), the Drug Enforcement Administration ("DEA"), the Departments of the Army, Navy, and Air Force, and various intelligence components of DOD.  (*Id*.)  Information provided by NSA in a classified setting to the military and other government agencies and officials within the Intelligence Community ("IC") is relevant to a wide range of important issues including, but not limited to, military order of battle, threat warnings and readiness, arms proliferation, terrorism, and foreign aspects of international narcotics trafficking.  (*Id*.)  This sensitive information is often critical to the conduct of U.S. foreign policy and of U.S. military operations around the world.  (*Id*.)  Moreover, intelligence produced by NSA is often unobtainable by other means.  (*Id*.)

NSA's ability to produce SIGINT depends on its access to foreign signals.  (*Id*. ¶ 8). Further, SIGINT capabilities are both expensive and fragile. (*Id*.)  Public disclosure of either the capability to collect specific signals or the substance of the SIGINT information itself can easily alert foreign adversaries to the vulnerability of their signals.  (*Id*.)

The subset of SIGINT information obtained from intercepted foreign communications is called communications intelligence ("COMINT").  (*Id*. ¶ 9).  A fundamental tenet of the COMINT process is that the identity of specific communicants whose communications are intercepted (commonly referred to as "targets"), the degree of success in exploiting these targets, and the vulnerability of particular foreign communications are all matters that must be maintained in strictest secrecy because the ability to exploit foreign communications is fragile.

(*Id.*)  Disclosure of the identity of the targets, the ability to exploit those targets, or the vulnerability of particular foreign communications would encourage countermeasures by the targets of NSA's COMINT efforts.  (*Id.*)  Disclosure of even a single intercepted communication holds the potential to reveal the intelligence collection techniques that are applied against targets around the world.  (*Id.*)  Once alerted, COMINT targets may change the way they communicate, which could inhibit access to the targets' communications and, therefore, deny the United States access to information crucial to the defense of the United States both at home and abroad.  (*Id.*)  If a target is successful in defeating an intercept operation, all of the intelligence from that source is lost unless and until NSA can establish new and equivalent exploitation of that target's signals.  (*Id.*)  If a source becomes unavailable, the military, national policymakers, combatant commanders, and the IC must operate without the information the communications provided.  (*Id.*)  Such losses are extremely harmful to the national security of the United States.  (*Id.*)

Congress has specifically recognized the inherent sensitivity of the SIGINT activities of NSA; thus, Congress has passed statutes to protect NSA's SIGINT efforts from damage by disclosure.  (*Id.* ¶ 10).  These statutes recognize the vulnerability of SIGINT to countermeasures of a foreign power or terrorist party and the significance of the loss of valuable foreign intelligence information to national policymakers, combatant commanders, and the IC.  (*Id.*)  These statutes are:  Section 6 of the National Security Act of 1959 (codified at 50 U.S.C. § 3605); Section 102A(i)(1) of the Intelligence Reform and Terrorism Prevention Act of 2004 (codified at 50 U.S.C. § 3024); and 18 U.S.C. § 798.  (*Id.*)  Under these three statutes, NSA is specifically authorized to protect certain information concerning its activities and its intelligence sources and methods from public disclosure.  (*Id.*)

The first of these statutes is a statutory privilege unique to NSA.  (*Id.* ¶ 30).  NSA's

statutory privilege is set forth in Section 6 of the National Security Agency Act of 1959, 50

U.S.C. § 3605.  (*Id.*)  Section 6 of the NSA Act provides that "[n]othing in this chapter or any

other law... shall be construed to require the disclosure of the organization or any function of the

National Security Agency, or any information with respect to the activities thereof."  (*Id.*)  By

this language, Congress expressed its finding that disclosure of any information relating to NSA

activities is potentially harmful.  (*Id.*)  Section 6 states unequivocally that NSA cannot be

compelled by statute to disclose any information with respect to its activities.  (*Id.*)  Further,

while in this case the harm would be exceptionally grave, NSA is not required to demonstrate

specific harm to national security when invoking this statutory privilege, rather, NSA need only

to show that the information relates to its activities.  (*Id.*)  To invoke this privilege, NSA must

demonstrate only that the information it seeks to protect falls within the scope of Section 6.  (*Id.*)

NSA's functions and activities are therefore protected from disclosure regardless of whether or

not the information is classified.

The second applicable statute is 18 U.S.C. § 798.  (*Id.* ¶ 31).  This statute prohibits the

unauthorized disclosure of classified information: (i) concerning the communications

intelligence activities of the United States, or (ii) obtained by the process of communications

intelligence derived from the communications of any foreign government.  (*Id.*)  The term

"communication intelligence," as defined by Section 798, means the "procedures and methods

used in the interception of communications and the obtaining of information from such

communications by other than the intended recipients."  (*Id.*)

The third applicable statute is the National Security Act of 1947, as amended by the

Intelligence Reform and Terrorism Prevention Act of 2004, 50 U.S.C. § 3024.  (*Id.* ¶ 32).  In

particular, section 102A(i)(1) of the Intelligence Reform and Terrorism Prevention Act of 2004

states that "[t]he Director of National Intelligence shall protect the intelligence sources and methods from unauthorized disclosure." (*Id*.)  NSA, as a member agency of the U.S. IC, must also protect intelligence sources and methods. (*Id*.)  Like the protection afforded to core NSA activities by Section 6 of the NSA Act of 1959, the protection afforded to intelligence sources and methods is absolute. (*Id*.)  Whether the sources and methods at issue are classified is irrelevant for purposes of the protection afforded by 50 U.S.C. § 3024. (*Id*.)

> 1.    *Information About NSA SIGINT Activities is Classified and Thus Falls Under FOIA Exemption 1.*

Section 552(b)(1) of the FOIA provides that the FOIA does not require the release of matters that are specifically authorized – under criteria established by an Executive Order – to be kept secret in the interest of the national defense or foreign policy and are in fact properly classified pursuant to such Executive Order. (*Id*. ¶ 19).  The current Executive Order that establishes such criteria is Executive Order 13526. (*Id*.)  Section 1.1 of Executive Order 13526 provides that information may be originally classified if: (1) an original classification authority is classifying the information; (2) the information is owned by, produced by or for, or is under the control of the government; (3) the information falls within one or more of the categories of information listed in section 1.4 of the Executive Order; and (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, and the original classification authority is able to identify or describe the damage. (*Id*. ¶ 20).

Section 1.4 of Executive Order 13526 provides that information shall not be considered for classification unless it falls within one (or more) of eight specifically enumerated categories of information. (*Id*. ¶ 21).  The categories of classified information at issue here are found in Section 1.4(c), which includes intelligence activities (including covert action), intelligence

6

sources and methods, or cryptology.  (*Id*.)  Acknowledgement of the existence or nonexistence of operational intelligence information concerning the who, what, when, and how of NSA's SIGINT collection efforts would reveal information that is currently and properly classified as set forth in Sections 1.4(c) of Executive Order 13526.  (*Id*.)

Confirming the existence or nonexistence of responsive records would disclose information that is currently and properly classified top secret pursuant to Section 1.2(a)(1) of Executive Order 13526 because all of the information that Plaintiff sought fall under one or more of the above-referenced exceptions and therefore would remain classified to date.  (*Id*. ¶ 22).  A positive or negative response to Plaintiff's request reasonably could be expected to cause exceptionally grave damage to national security.  (*Id*.)  Any disclosure of this information could reasonably be expected to harm national security because it would reveal NSA intelligence capabilities, activities, and priorities, which in turn could inhibit SIGINT collection and affect NSA's ability to counter threats to the national security of the United States.  (*Id*.)

Acknowledging the existence or nonexistence of responsive records on particular individuals or organizations that may be subject to surveillance would provide adversaries with critical information about the capabilities and limitations of NSA, such as the types of communications that may be susceptible to NSA detection.  (*Id*. ¶ 23).  Confirmation by NSA that a person's activities are not of foreign intelligence interest or that NSA is unsuccessful in collecting foreign intelligence information on their activities on a case-by-case basis would allow adversaries to accumulate information and draw conclusions about NSA's technical capabilities, sources, and methods.  (*Id*.)  Over time, the accumulation of these inferences would disclose the targets and capabilities, and therefore the sources and methods, of NSA's SIGINT activities and functions, and inform our adversaries of the degree to which NSA is aware of some of their

operatives or can successfully exploit particular communications.  (*Id.*)

NSA cannot respond to each case in isolation, but must assume that our adversaries will examine all released information together.  (*Id.* ¶ 24).  These compilations of information, if disclosed, could reasonably be expected to cause exceptionally grave and irreparable damage to the national security by providing our adversaries a road map that instructs them on which communication modes or personnel remain safe or are successfully defeating NSA's capabilities.  (*Id.*)  Our adversaries could exploit this information in order to conduct their activities more securely, to the detriment of the national security of the United States.  (*Id.*)  Indeed, section 1.7(e) of Executive Order 13526 specifically contemplate the danger of such compilations.  (*Id.*)

Therefore, NSA must use the *Glomar* response consistently in all cases where the existence or nonexistence of records responsive to a FOIA request is a classified fact, including in both instances in which NSA does or does not possess records responsive to a particular request.  (*Id.* ¶ 25).  If NSA were to invoke a *Glomar* response only when it actually possessed responsive records, the *Glomar* response would be interpreted as an admission that responsive records exist.  (*Id.*)  Consistent use of the *Glomar* response is necessary to ensure its effectiveness.  (*Id.*)

2.    *Information About NSA SIGINT Activities is Protected from Disclosure by Statute and Thus Falls Under FOIA Exemption 3.*

Section 552(b)(3) of the FOIA provides that the FOIA does not require the disclosure of matters that are specifically exempted from disclosure by statute, provided that such statute requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or establishes particular criteria for withholding or refers to particular types of matters to be withheld.  (*Id.* ¶ 28 (citing 5 U.S.C. § 552(b)(3)).  Review of the application of Exemption 3 consists solely of determining that the statute relied upon qualifies as an Exemption

3 statute, and that the information withheld falls within the scope of the statute.  (*Id.*)

### C.  PLAINTIFF'S FOIA REQUESTS.

Plaintiff submitted a FOIA request to NSA's FOIA Office on January 8, 2021 ("Request

#1").[1]  (*Id.* ¶ 11 (attaching copy of request as Ex. A)).  The request included the following

details:

> I am requesting any records, books, files, electronic surveillance
> (ELSUR) files, warrants, FISC warrants, information, reports,
> books, electronic files or Zestso (sic) information in any medium in
> your control or possession or any records repository concerning
> relating to or relevant to the following; #1 myself, Afshin
> Bahrampour, Date of Birth 5-26-1969.

(*Id.*)  In response to Request #1, NSA sent a letter on March 17, 2021, informing Plaintiff that

the request was assigned "Case Number 111391," and explaining that the fact of the existence or

nonexistence of responsive records was currently and properly classified in accordance with

Executive Order 13526 and was thus exempt from disclosure based upon Exemption 1 of the

FOIA.  (*Id.* ¶ 12).  The letter further explained that the existence or nonexistence of the same

information was also protected from release by statute, and thus also exempt from release based

upon Exemption 3 of the FOIA.  (*Id.*)  This response is commonly referred to as a *Glomar*

response.  (*Id.*)  Finally, the letter informed Plaintiff of his right to appeal this determination.  (*Id.*

(attaching a copy of this letter as Ex. B)).

On March 24, 2021, Plaintiff sent a letter to the FOIA/PA Appeal Authority appealing

NSA's March 17, 2021 denial letter.  (*Id.* ¶ 13).  In the appeal letter, Plaintiff requested

production of a *Vaughn* index, a declassification review of responsive materials, and release of

all segregable unclassified information.  (*Id.* (attaching a copy of this letter as Ex. C)).

On April 6, 2021, the Agency acknowledged the Plaintiff's appeal, and responded to the

---

[1] This is referred to as Request #1 in Plaintiff's Complaint.  (*See* Am. Compl. at 2).

appeal with a denial, upholding its *Glomar* assertion, in a letter dated April 16, 2021.  (*Id.* ¶ 14 (attaching a copy of these letters as Ex. D)).

Plaintiff's Complaint also references a second FOIA request, "Request #2," which he alleges he submitted in "June or July" requesting records "relaying to or relevant to "records relating or relevant to 'directed radio frequency energy,' the 'Frey Effect,' and ultrasonic or directed energy 'crowd control weapons.'"  (Am. Compl. at 8).  NSA has conducted a thorough review of its records and is unable to locate this request.  (Kiyosaki Decl. ¶ 3 n.1).  Accordingly, no response was provided to this purported request.

### D.  PLAINTIFF'S FOIA REQUEST #1 – NSA'S *GLOMAR* DETERMINATION.

NSA interpreted Plaintiff's Request #1 as one seeking intelligence records; specifically COMINT which includes intercepted foreign government communications.  (*Id.* ¶ 17).  To the extent a plaintiff seeks intelligence information, NSA's response is to state that it cannot confirm or deny publicly in any case whether or not it has such records, as doing so would reveal whether or not NSA engaged in certain, or any, intelligence activities, and/or did or did not target individual communications for collection.  (*Id.*).

This determination that the existence or nonexistence of the requested records is classified was not made to conceal violations of law, inefficiency, or administrative error; to prevent embarrassment to a person, organization or agency; to restrain competition; or to prevent or delay the release of information that does not require protection in the interests of national security.  (*Id.* ¶ 18; *see also id.* ¶ 26).  For these reasons, the fact of the existence or nonexistence of intelligence information requested by Plaintiff is a currently and properly classified matter in accordance with Executive Order 13526, and thus Plaintiff's FOIA request was denied pursuant to FOIA Exemption 1.  (*Id.* ¶ 27).

Additionally, the information here falls within the scope of several statutes.  (*Id.* ¶ 29).

Information about NSA's SIGINT efforts directly relates to the Agency's core functions and activities and to intelligence sources and methods. (*Id.*) Congress enacted three statutes to protect NSA's SIGINT efforts, as described above, including but not limited to the existence and depth of signals intelligence-related successes, weaknesses, and exploitation techniques. (*Id.*) These statutes recognize the vulnerability of signals intelligence to countermeasures and the significance of the loss of valuable intelligence information to national policymakers, combatant commanders, and the IC. (*Id.*). For these reasons, Plaintiff's FOIA request was also denied pursuant to FOIA Exemption 3. (*Id.* ¶ 34).

## STANDARDS OF REVIEW

### A.        THE FOIA.

The FOIA requires United States government agencies to disclose agency records upon receiving a properly submitted written request for them. 5 U.S.C. § 552(a)(3)(A). However, not every agency record must be released in response to a request under the FOIA. There are nine categories of agency records that are exempted from release by 5 U.S.C. § 552(b), and three categories of records that are excluded from the FOIA by 5 U.S.C. § 522(c). Agency information that falls within the terms of FOIA exemptions need not be disclosed. *Halpern v. Federal Bureau of Investigation*, 181 F.2d 279, 287 (2d Cir. 1999) (citations omitted); *see also John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151-152 (1989).

The FOIA authorizes courts only to enjoin an agency from improperly withholding agency records from a person who has made a proper written request for the records. 5 U.S.C. § 522(a)(4)(B); *see* 5 U.S.C. § 552(a)(3)(A) (written request requirement). A court cannot provide relief under the FOIA unless the requester demonstrates that the agency has (1) improperly (2) withheld (3) agency records that are not exempt or excluded. *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 150 (1980). "A federal district court lacks jurisdiction

'to force an agency to comply with the FOIA's disclosure requirements' unless these three elements are met." *Pair v. Social Sec. Admin.*, No. RDB-15-1458, 2016 WL 739188, at *3 (D. Md. Feb. 25, 2016) (quoting *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989)).

### B.  MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION.

A federal court "generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction)." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 93-102 (1998)).  Exhaustion of administrative remedies is required before seeking judicial review under FOIA so that the agency has an opportunity to exercise its discretion and expertise on the matter and to create a factual record to support a decision regarding the request.  *See McCarty v. United States*, 395 U.S. 185 (1969).  This Court has held specifically that, absent exhaustion of administrative remedies, FOIA cases are "not subject to judicial review."  *Smith v. Cummings*, No. PJM-10-1891, 2010 WL 2925880, at *2 (D. Md. July 22, 2010).

### C.  SUMMARY JUDGMENT IN FOIA ACTIONS.

Summary judgment is the procedural vehicle by which nearly all FOIA cases are resolved.  *Wickwire Gavin, P.C. v. U.S. Postal Serv.*, 356 F.3d 588, 591 (4th Cir. 2004) ("FOIA cases are generally resolved on summary judgment once the documents at issue have been properly identified.") (internal citation omitted).

A party moving for summary judgment must support its motion with facts that cannot be genuinely disputed by citing to the particular parts of the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other material. Fed. R. Civ. P. 56(c)(1).  A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247-48 (1986) (discussing the standard, which previously was set forth in Rule 56(c)).

To dispute an asserted fact, the non-moving party must establish that there is a genuine dispute by citing to particular parts of materials in the record or show that the materials cited by the moving party do not establish the absence of genuine dispute or that the moving party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1). For a fact to be material, it must affect the outcome of the action under the governing substantive law; a dispute about an irrelevant fact cannot preclude entry of summary judgment. *Anderson*, 477 U.S. at 248. A dispute of fact must also be "genuine." *Id*. at 248. This means it must be supported by evidence on which the jury could reasonably find for the non-moving party. *Id*. at 252. The mere existence of a "scintilla of evidence" in support of the non-moving party's position cannot forestall summary judgment. *Id*. at 252.

"In meeting [its] burden, the agency may rely upon reasonably detailed, nonconclusory affidavits and declarations submitted in good faith." *Goldner v. Social Sec. Admin*, 293 F. Supp. 3d 540, 544 (D. Md. 2017) (quoting *Freeman v. U.S. Dep't of Justice*, No. 86-1073, 1986 WL 18310, at *2 (4th Cir. Dec. 29, 1986)). As in any review of a summary judgment motion, if sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing then the motion should be denied, *Liberty Lobby*, 477 U.S. at 248; however, the belief of the plaintiff alone "that there are other documents he is entitled to . . . is inadequate to withstand a motion for summary judgment." *Goldner*, 293 F. Supp. 3d at 544 (quoting *Heily v. U.S. Dep't of Commerce*, 69 F. App'x 171, 174 (4th Cir. 2003)). This is because agency declarations are

"accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *Id*. (quoting *SafeCard Servs., Inc. v. Sec. and Exch. Comm'n*, 926 F.2d 1197, 1200 (D.D.C. 1991) (internal quotations and citation omitted)). "To prevail over this presumption, a requestor must demonstrate a material issue by producing evidence, through affidavits or other appropriate means, contradicting the adequacy of the search or suggesting bad faith." *Id*. (quoting *Heily*, 69 F. App'x at 173).

## ARGUMENT

Plaintiff challenges the NSA's response to his letter dated January 8, 2021 seeking "any and all intelligence records on myself, Afshin Bahrampour," and the lack of a response to a request in "June or July" requesting "records relating or relevant to 'directed radio frequency energy,' the 'Frey Effect,' and ultrasonic or directed energy 'crowd control weapons.'" (Am. Compl. at 2, 8). As to the second request, Plaintiff failed to exhaust administrative remedies and claims related to that request should be dismissed for lack of subject matter jurisdiction. With respect to the first request, NSA has not improperly withheld responsive records and is, therefore, entitled to summary judgment as to Plaintiff's claims related to that request.

### A. PLAINTIFF IS PRECLUDED FROM SEEKING JUDICIAL REVIEW OF REQUEST #2 BECAUSE HE FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES.

Dismissal is appropriate as to Plaintiff's purported Request #2 because Plaintiff failed to exhaust his administrative remedies. To make requests under the FOIA, a citizen must follow the agency's published regulations regarding procedures to be followed. *See* 5 U.S.C. § 552(a)(3)(A)(ii); *Pollack v. Dep't of Justice*, 49 F.3d 115, 118 (4th Cir. 1995), *aff'd*, 218 F. App'x 256 (4th Cir. 2007). "Before judicial review of compliance can occur, citizens must exhaust administrative agency procedures." *Sanders v. United States*, No. DKC-06-1528, 2006 WL 4707001, at *3 (D. Md. Nov. 14, 2006) (citing 5 U.S.C. § 552(a)(6)(C)); *Oglesby v. U.S.*

*Dep't of Army*, 920 F.2d 57, 65 (D.C. Cir. 1990).  "Under FOIA's statutory scheme, when an agency fails to comply in a timely fashion to a proper FOIA request, it may not insist on the exhaustion of administrative remedies, *see* 5 U.S.C. § 552(a)(6)(C), unless the agency responds to the request before it is filed.  *Pollack*, 49 F.3d at 118.  Such constructive exhaustion can only occur, however, when a requestor submits a proper FOIA request that comports with agency regulations.  *Id*.

NSA has no record of receiving Plaintiff's Request #2.  (Kiyosaki Decl. ¶ 3, n.1).  This Court has found that where, as here, Plaintiff has not even filed a request for records, dismissal is proper on the basis of failure to exhaust administrative remedies.  *See, e.g.*, *Haley v. Social Sec. Admin.*, No. RWT-12-3086, 2013 WL 2949074, at *2 (D. Md. June 13, 2013) (dismissing Plaintiff's complaint for failure to exhaust administrative remedies because "there is no evidence Plaintiff even filed a request for documents with a federal agency."); *Sanders*, 2006 WL 4707001, at *3 (same).  Because Plaintiff has failed to exhaust his administrative remedies as to Request #2, his claims related to this request should be dismissed.

## B. NSA PROPERLY PROVIDED A "*GLOMAR*" RESPONSE TO PLAINTIFF'S FOIA REQUEST #1.

### 1. *FOIA and Exemptions*.

"The [FOIA] was enacted to facilitate public access to Government documents."  *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (citation omitted), and to vindicate the public's right to know "what their government is up to."  *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989) (quotation marks omitted); *see also Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1087-88 (D.C. Cir. 2014); *Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 193 (2d Cir. 2012); *Yonemoto v. Dep't of Vet. Affairs*, 686 F.3d 681, 694 (9th Cir. 2012).  Consistent with this objective, FOIA requires

that "each [federal] agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any) and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). "FOIA requires federal agencies to disclose agency records unless they may be withheld pursuant to one of nine enumerated exemptions listed in 5 U.S.C. § 552(b)." *Havemann v. Colvin*, 629 F. App'x 537, 539 (4th Cir. 2015). NSA invoked two of those exemptions here: Exemption 1, under 5 U.S.C. § 552(b)(1), and Exemption 3, under 5 U.S.C. § 552(b)(3).

Under Exemption 1, "an agency need not make documents available to the public that are '(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order.'" *Al Fayed v. United States*, 210 F.3d 421, 423 (4th Cir. 2000) (quoting 5 U.S.C. § 552(b)(1)).

Executive Order Number 13526, 75 FR 707 (Dec. 29, 2009) establishes the classification guidelines. Section 1.4 of that Executive Order specifies: "Information shall not be considered for classification unless its unauthorized disclosure could reasonably be expected to cause identifiable or describable damage to the national security . . . ." Additionally, the information must pertain to at least one of eight categories, including intelligence activities, intelligence sources or methods, or cryptology; or vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security. *Igoshev v. Nat'l Sec. Agency/Cent. Sec. Serv.*, No. ELH-17-1363, 2018 WL 2045530 (D. Md. May 1, 2018) (citing Exec. Order No. 13526 at sec. 1.4(c), (g)). "An agency may invoke this exemption only if it complies with classification procedures established by the relevant executive order and

16

withholds only such material as conforms to the order's substantive criteria for classification."
*Id.* (quoting *King v. U.S. Dep't of Justice*, 830 F.2d 210, 214 (D.C. Cir. 1987)).

Exemption 3, 5 U.S.C. § 552(b)(3), provides that disclosure under FOIA is not required if the information sought is "specifically exempted from disclosure by statute," so long as that statute requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or establishes particular criteria for withholding or refers to particular types of matters to be withheld.  *Id.*  For Exemption 3 to apply, "the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage."  *Igoshev*, 2018 WL 2045530, at *6 (quoting *Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 350 (D.C. Cir. 1978)).

2.      *Plaintiff's Request #1.*

NSA did not improperly withhold records responsive to Request #1.  Request #1 sought "any and all intelligence records on myself, Afshin Bahrampour."  (Am. Compl. at 2).  NSA interpreted the request as seeking intelligence information, and responded that the fact of the existence or nonexistence of the requested materials is a currently and properly classified matter and is specifically protected from disclosure.  (*See* Kiyosaki Decl. ¶ 12).  Citing FOIA Exemptions 1 and 3, 5 U.S.C. §§ 552(b)(1) and (3), NSA responded that it could neither confirm nor deny the existence of responsive records.  (*Id.*)

NSA could not acknowledge the existence or nonexistence of responsive records because a response would reveal information that is currently and properly classified in accordance with Executive Order 13526 and is protected from disclosure by statute.  (*Id.* ¶ 4).  As discussed below, NSA's *Glomar* response was appropriately tethered to Exemption 1, as well as to Exemption 3.

With respect to NSA's assertion of Exemption 1, confirming the existence or

nonexistence of the responsive records would disclose information that is currently and properly classified pursuant to Section 1.1(4) of Executive Order 13526. (Kiyosaki Decl. ¶ 20). NSA must use a *Glomar* response consistently in all cases where the existence or nonexistence of records is a classified fact, even in cases in which it does not possess responsive records. (*Id*. ¶ 25). In such situations, disclosure of whether or not NSA has records or information could reasonably be expected to harm national security because it would reveal NSA's capabilities, activities, and intelligence priorities, which in turn could inhibit SIGINT collection and affect NSA's ability to counter threats to the national security of the United States. (*Id*. ¶ 22). Acknowledging the existence or nonexistence of responsive records about particular individuals or organizations that may be subject to surveillance would provide adversaries with critical information about NSA's capabilities, such as the types of communications that may be susceptible to NSA detection. (*Id*. ¶ 23).

Moreover, acknowledging the nonexistence of information could confirm that a person's activities are not of foreign intelligence interest or that NSA is unsuccessful in collecting foreign intelligence information on that person's activities. (*Id*.). That information, on a case-by-case basis would allow adversaries to accumulate information and draw conclusions about NSA's technical capabilities, sources, and methods. (*Id*.). Over time, the accumulation of information would allow adversaries to draw inferences about who is and is not a target, and would disclose sources and methods relating to NSA's SIGINT activities and functions. (*Id*.). Putting together information, adversaries could ascertain the degree to which NSA is aware of some of their operatives or is able to successfully exploit particular communications. *See Central Intelligence Agency v. Sims*, 471 U.S. 159, 178 (1985) ("[T]he very nature of the intelligence apparatus of any country is to try to find out the concerns of others; bits and pieces of data may aid in piecing

together other bits of information even when the individual piece is not of obvious importance in itself.") (internal quotation marks and citation omitted); *Larson v. Dep't of State*, 565 F.3d 857, 864 (D.C. Cir. 2009) ("Minor details of intelligence information may reveal more information than their apparent insignificance suggests, because, much like a piece of a jigsaw puzzle, [every detail] may aid in piecing together other bits of information even when the individual piece is not of obvious importance in itself."). Ultimately, the compilation of disclosed information could reasonably be expected to cause exceptionally grave and irreparable damage to the national security by providing the United States' adversaries with a road map as to which communication modes or personnel remain safe or are successfully defeating NSA's capabilities. (Kiyosaki Decl. ¶ 24).

NSA has plausibly explained the damage that could result if NSA were to confirm or deny the existence of responsive records. Accordingly, its *Glomar* response based on Exemption 1 should be upheld. *Igoshev*, 2018 WL 2045530, at *6-7 (citing *Larson*, 565 F.3d at 862 ("[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible.") (additional citations omitted)).

Further, NSA also properly relied on Exemption 3 in its *Glomar* response. The existence or nonexistence of the requested intelligence information is protected from disclosure by statute. The three statutes described above (*see supra* Background § B) (50 U.S.C. § 3605, 18 U.S.C. § 798, and 50 U.S.C. § 3024) are also applicable to the fact of the existence or nonexistence of records responsive to Plaintiff's request. (Kiyosaki Decl. ¶¶ 28-33). Moreover, two of these statutes (50 U.S.C. § 3605 and 50 U.S.C. § 3024) protect the information regardless of whether it is classified because it relates to NSA's activities. Section 6 of the National Security Act of 1959, 50 U.S.C. § 3605 states in relevant part, "nothing in this chapter or any other law . . . shall

be construed to require the disclosure of the organization or any function of the National Security Agency, or any information with respect to the activities thereof . . . ." *Igoshev*, 2018 WL 2045530, at *8.  Notably, "Section 6 qualifies as an Exemption 3 statute, and provides absolute protection . . . ." *Id.* (finding NSA's denial of plaintiff's FOIA request was appropriate under Exemption 3) (citing *Larson*, 565 F.3d at 868).  Here, as in *Igoshev*, NSA properly provided a *Glomar* response based on Exemption 3.

In conclusion, NSA did not improperly withhold responsive records with respect to Request #1.  Accordingly, Plaintiff is not entitled to any relief under the FOIA and this action should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss this action as to Request #2, and grant summary judgment in its favor as to Request #1.

Respectfully submitted,

EREK L. BARRON
United States Attorney

_____/s/_____
Kimberly S. Phillips (Bar No.: 811611)
Assistant United States Attorney
36 S. Charles Street, 4th fl.
Baltimore, Maryland 21201
410-209-4800
kimberly.phillips@usdoj.gov