IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| AFSHIN BAHRAMPOUR, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-21-2412 |
| NATIONAL SECURITY AGENCY, et al., | * | |
| | * | |
| Defendant. | | |

\*\*\*

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant National Security Agency's ("NSA") Motion for Summary Judgment (ECF No. 47). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons set forth below, the Court will grant the Motion.

### I. BACKGROUND

This action concerns two Freedom of Information Act ("FOIA") requests to NSA from self-represented Plaintiff Afshin Bahrampour. (See 2d Am. Compl. ["Compl."] at 2–3, ECF No. 32). Bahrampour submitted the first request ("Request 1") on January 8, 2021. (Req. 1 at 21–23, ECF No. 47-2).[1] He asked for "any records, books, files, electronic surveillance (ELSUR) files, warrants, FISC warrants, information, reports, books, electronic files or Zestso (sic) information in any medium in your control or possession or

---

[1] The NSA filed multiple exhibits in one document attached to its Motion. (ECF No. 47-2). Citations to exhibit page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system in that document.

any records repository concerning relating to or relevant to the following; #1 myself, Afshin Bahrampour, Date of Birth 5-26-1969." (Id. at 21).

On March 17, 2021, NSA responded and explained that under Executive Order 13526, as well as 18 U.S.C. § 798, 50 U.S.C. § 3024(i), and 50 U.S.C. § 3605, "we are not able to confirm or deny the existence of intelligence records on any and all individuals who request them." (Mar. 17, 2021 Letter at 26–28, ECF No. 47-2). NSA further explained that it could not respond to Bahrampour's request because of security concerns:

> Were we to [respond] in your case, we would have to do so for every other requester. This would enable, for example, a terrorist or other adversary to file a FOIA request with us in order to determine whether he or she was under surveillance or had evaded it. This in turn would allow that individual to better assess whether they could successfully act to damage the national security of the United States. For such reasons we can neither confirm nor deny the existence or non-existence of the records you requested.

(Id. at 26). This response is a standard response called a Glomar response. (Id. at 26–27).

Bahrampour appealed the decision on March 24, 2021. (Req. 1 Appeal at 30, ECF No. 47-2). He requested a Vaughn index,[2] a declassification review of responsive materials, and the release of all segregable unclassified information. (Id. at 31–32). On April 16, 2021, NSA denied the appeal. (Apr. 16, 2021 Letter at 36, ECF No. 47-2).

---

[2] A Vaughn index is a document that agencies prepare in FOIA litigation to justify each withholding, as set forth by Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973). National Archives, FOIA Resources, https://www.archives.gov/ogis/resources#:~:text=A%20Vaughn%20Index%20is%20a,1973)%2C%20cert. (last visited Jan. 25, 2024).

On March 14, 2022, Bahrampour submitted a second FOIA request ("Request 2"). (Req. 2 at 39–40, ECF No. 47-2). He asked for:

> #1 Biological effects of electromagnetic [r]adiation;
> #2 Any environmental impact statements or supplemental environmental impact statements concerning effects of continuously exposing humans to electromagnetic [r]adiation;
> #3 Any communication systems or [d]evices which employ the microwave [a]uditory effect or microwave pulses;
> #4 Electronic Brain Link or E.M.F. [b]rain stimulation or [r]emote [n]eural monitoring [d]evices or tools/systems;
> #5 Any G.P.S. targeting for [n]on-lethal systems.

(Id.). On April 5, 2022, NSA replied to Request 2 and informed Bahrampour that it had located some responsive material, but that it "require[d] review prior to release." (Apr. 5, 2022 Letter at 44, ECF No. 47-2). NSA further informed Bahrampour that his request was in the backlog queue and that the agency processes requests in the order that they are received. (Id.).

Linda M. Kiyosaki, the NSA's Chief of Enterprise Guidance Services, explains in her Affidavit that the material found in its search was responsive to the first prong of Bahrampour's request, but it originated with another agency, the Defense Intelligence Agency ("DIA"). (Kiyosaki Aff. ¶ 36, ECF No. 47-2). Because NSA did not originate the materials, it was "unable to make a determination as to releasability" so it "referred the material to DIA for its review and direct response" to Bahrampour. (Id.).

Bahrampour filed this action on September 20, 2021. (ECF No. 1). He subsequently filed amended Complaints on December 16, 2021, (ECF No. 4), and September 26, 2022, (ECF No. 32). After he filed suit, NSA's counsel reviewed Request 2 in March 2022 to ensure that it had been processed correctly. (Kiyosaki Aff. ¶ 37). NSA concluded that

3

Request 2 was "extraordinarily broad." (Id.). Bahrampour prefaced the terms of Request 2 by asking for materials "relating to or relevant to any of the following," making it difficult to discern what documents might be responsive. (See id. ¶ 38). On November 14, 2022, NSA sent Bahrampour a letter asking him to narrow his request. (Nov. 14, 2022 Letter at 47–48, ECF No. 47-2). NSA explained that Request 2 did not "reasonably describe" the documents sought as required by 5 U.S.C. § 552(a)(3), nor did it contain temporal limits. (Id. at 47). For example, Request 2 broadly asked for documents relating to electromagnetic radiation, without specifying whether it referred to the entire electromagnetic spectrum or a certain biological effect of radiation in particular. (Id. at 47–48).

On November 20, 2022, Bahrampour responded and limited his request in the following ways: (1) a temporal restriction "to the last 50 years" or from 1970 to 2022; (2) he sought only information about manmade electromagnetic radiation; (3) he split the first prong of his request into eleven sub-parts aimed at different parts of the electromagnetic spectrum; and (4) he sought information relating to the United States Navy's "Strategic Communications platform" as well as environmental impact statements ("EIS") relating to radiation. (Nov. 20, 2022 Letter at 50–54, ECF No. 47-2). On December 8, 2022, NSA, through the United States Attorney's Office, wrote to Bahrampour to explain that his request was still very broad because it implicated the entire manmade electromagnetic spectrum over a fifty-year period. (Dec. 8, 2022 Letter at 58, ECF No. 47-2). NSA asked whether he could narrow his request by further limiting the temporal range, whether he meant to direct Request 2 to the Navy, and whether he could better describe the documents sought—such as EIS related to human research conducted by NSA. (Id.).

The parties exchanged a total of twelve letters attempting to narrow Bahrampour's request. (Kiyosaki Aff. ¶ 49). NSA informed him that "[s]tudying the biological effects of electromagnetic radiation and its environmental impact do not fall within the primary mission set of NSA as it endeavors to collect and disseminate foreign intelligence information." (Jan. 10, 2023 Letter at 65, ECF No. 47-2). It further asked Bahrampour to "more precisely identify the records you seek[]" to "enable a search of NSA's records." (Id. at 65–66). Bahrampour eventually limited the temporal range to the past ten years, and he requested EIS related to "the biological effects of electromagnetic radiation," (Feb. 14, 2022 Letter at 68–69, ECF No. 47-2), as well as a list of NSA "components" or projects pertaining to electromagnetic radiation. (Mar. 14, 2023 Letter at 77, ECF No. 47-2). NSA responded that his request remained overbroad and that the information concerning alleged components or projects was protected from disclosure by 50 U.S.C. § 3605. (Mar. 31, 2023 Letter at 82–83, ECF No. 47-2).

When the parties were unable to satisfactorily narrow Request 2, they ceased communicating, (Kiyomaki Aff. ¶ 48), and NSA filed the instant Motion for Summary Judgment on August 14, 2023, (ECF No. 47). Bahrampour filed an Opposition on November 13, 2023, (ECF No. 58), in which he incorporated by reference arguments he made in an earlier filing, (ECF No. 19). NSA filed a Reply on November 27, 2023, (ECF No. 59).

## II.  DISCUSSION

### A.  Standard of Review

Federal courts commonly resolve FOIA cases by summary judgment. Wickwire Gavin, P.C. v. U.S. Postal Serv., 356 F.3d 588, 591 (4th Cir. 2004) (internal citation omitted). Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. Id. at 248–49.

FOIA requires federal agencies to disclose agency records unless they may be withheld pursuant to one of nine enumerated exemptions listed in § 552(b). When a plaintiff asserts a civil claim that an agency failed to disclose information as required by FOIA, courts "shall determine the matter de novo." 5 U.S.C. § 552(a)(4)(B). The Court reviews the record evidence to determine: (1) the reasonableness of the agency's search for responsive records, and (2) that any redacted or withheld records fall under one of FOIA's

disclosure exemptions. Rein v. U.S. Patent & Trademark Off., 553 F.3d 353, 362 (4th Cir. 2009). The agency has the burden of establishing these two requirements. See Carney v. U.S. Dep't of Just., 19 F.3d 807, 812 (2d Cir. 1994). This burden may be met through affidavits explaining the manner in which the search was conducted. See id. "An agency's affidavits must be relatively detailed and nonconclusory in order to support a FOIA exemption." Heily v. U.S. Dep't of Com., 69 F.App'x 171, 173 (4th Cir. 2003). The Court "is entitled to accept the credibility of such affidavits, so long as it has no reason to question the good faith of the agency." See Bowers v. U.S. Dep't of Just., 930 F.2d 350, 357 (4th Cir. 1991) (quoting Spannaus v. Dep't of Just., 813 F.2d 1285, 1289 (4th Cir. 1987)).

To prevail over the presumption of credibility, a "requestor must demonstrate a material issue by producing evidence, through affidavits or other appropriate means, contradicting the adequacy of the search or suggesting bad faith." Heily, 69 F.App'x at 173. Thus, the plaintiff's belief "that there are other documents he is entitled to . . . is inadequate to withstand a motion for summary judgment" without additional evidence. Goldner v. Soc. Sec. Admin., 293 F.Supp.3d 540, 544 (D.Md. 2017) (quoting Heily, 69 F.App'x at 174). When deciding whether the parties have met their burdens, the district court must consider the record in the light most favorable to the nonmoving party. Heily, 69 F.App'x at 173.

**B.   Analysis**

    **1.   Request 1**

Bahrampour alleges that NSA withheld records responsive to Request 1, which asked for "any" intelligence records on himself. (Req. 1 at 21). NSA argues that it properly

withheld any responsive documents under 5 U.S.C. § 552(b)(1) (commonly referred to as "FOIA Exemption 1") and 5 U.S.C. § 552(b)(3) ("FOIA Exemption 3"). (Mem. Supp. Mot. Summ. J. ["Mot."] at 19, ECF No. 47-1). The Court agrees with NSA.

FOIA Exemption 1 provides that an agency need not make documents available to the public that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1)(A); see Al Fayed v. U.S., 210 F.3d 421, 423 (4th Cir. 2000). At issue here is Executive Order No. 13526, 75 Fed.Reg.707, 707 (Dec. 29, 2009), which provides that an agency may designate documents as classified if four conditions are met:

> (1) an original classification authority is classifying the information;
> (2) the information is owned by, produced by or for, or is under the control of the United States Government;
> (3) the information falls within one or more of the categories of information listed in section 1.4 of [Executive Order No. 13,526]; and
> (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

Id.

Bahrampour argues that FOIA requires NSA to identify responsive records and explain why each has been withheld. (1st Opp'n at 36, ECF No. 19). In her Affadavit,[3]

---

[3] Bahrampour does not dispute that Kiyosaki's Affidavit is sufficiently detailed to justify summary judgment. See James Madison Project v. Nat'l Sec. Agency, No. TDC-

Kiyosaki explains that NSA owns the materials and is the original classifying authority. (Kiyosaki Aff. ¶ 23). Further, confirming the existence or nonexistence of any NSA records on Bahrampour, or on any individual, would reveal information relating to intelligence activities:

> [I]f NSA were to admit publicly in response to a FOIA request that no information about Persons X or Y exists, but in response to a separate FOIA request about Person Z state only that no response could be made, this would give rise to the inference that Person Z is or has been a target. Over time, the accumulation of these inferences would disclose the targets and capabilities, and therefore the sources and methods, of NSA's [] activities and functions, and inform our adversaries of the degree to which NSA is aware of some of their operatives….

(Id.). Disclosure could thus damage national security and "affect NSA's ability to counter threats to the national security of the United States." (Id. ¶ 22). Therefore, the information sought meets all four requirements to be properly classified under Executive Order 13526.

The Kiyosaki Affadavit provides a detailed and credible explanation of why Exemption 1 applies to Request 1. Bahrampour has failed to show that Exemption 1 does not apply, or that NSA acted in bad faith. Accordingly, NSA properly issued a Glomar response under Exemption 1 declining to disclose information.

The NSA also argues that its response was proper under Exemption 3, 5 U.S.C. § 552(b)(3). (Mot. at 9). Exemption 3 provides that FOIA does not require the disclosure of matters that are "specifically exempted from disclosure by statute," if the statute

---

22-0153, 2023 WL 4181196, at *3 (D.Md. June 26, 2023) (analyzing whether agency's affidavits were sufficiently detailed to warrant a grant of summary judgment).

"requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue," or "establishes particular criteria for withholding or refers to particular types of matters to be withheld . . . ." 5 U.S.C. § 552(b)(3). NSA avers that three statutes exempt disclosure as to Request 1: 50 U.S.C. § 3605, 18 U.S.C. § 798, and 50 U.S.C. § 3024. (Mot. at 4–5).

First, §6 of 50 U.S.C. § 3605, also known as the National Security Agency Act of 1959, provides that "[n]othing in this chapter or any other law . . . shall be construed to require the disclosure of the organization or any function of the National Security Agency, or any information with respect to the activities thereof . . . ." Id. Federal courts have held that "Section 6 [of the National Security Act] qualifies as an Exemption 3 Statute" and that it "provides absolute protection" from disclosure, without requiring a showing of harm to national security. Larson v. Dep't of State, 565 F.3d 857, 868 (D.C. Cir. 2009); see also James Madison Project, 2023 WL 4181196, at *5.

As explained above, disclosure of NSA records responsive to Request 1 would require NSA to reveal classified information about its function and activities. (Kiyosaki Aff. ¶ 23). Therefore, the records sought fall within the coverage of §6 of the National Security Act, and they may be withheld accordingly.

Second, 18 U.S.C. § 798 prohibits the unauthorized disclosure of classified information: (i) "concerning the communications intelligence activities of the United States," or (ii) obtained by the process of communications intelligence derived from the communications of any foreign government. Id. The term "communication intelligence," as defined by § 798, means the "procedures and methods used in the interception of

10

communications and the obtaining of information from such communications by other than the intended recipients." Id. Again, the records sought in Request 1, or the simple acknowledgment that such records do or do not exist, concerns the communications intelligence of the United States for the reasons explained in Kiyosaki's Affidavit. (Kiyosaki Aff. ¶ 23). Accordingly, nondisclosure and the Glomar response are also justified by this statute. Because the Court has determined that information was properly withheld under these first two statutes, the Court need not determine whether 50 U.S.C. § 3024 also applies here.

## 2. Request 2

In Request 2, Bahrampour sought "any records" or information "[r]elating to or [r]elevant to . . . [b]iological effects of electromagnetic [r]adiation," "environmental impact statements . . . concerning effects continuously exposing humans to electromagnetic [r]adiation," "communication systems or [d]evices which employ the microwave [a]uditory effect or microwave pulses," "[r]emote [n]eural monitoring [d]evices," and "G.P.S. targeting for [n]on-lethal systems." (Req. 2 at 40). He argues responsive records were withheld and NSA acted in bad faith. (1st Opp'n at 34). NSA argues that Request 2 was overly broad so that it could not locate the records "with a reasonable amount of effort." (Mot. at 2). At bottom, the Court agrees with the NSA.

"FOIA does not require a perfect search, only a reasonable one." Rein, 553 F.3d at 362. Plaintiffs must "'identify specific deficiencies in the agency's response' that contradict the adequacy of the search or suggest bad faith." Ayyad v. Internal Revenue Serv., No. PX 16-3032, 2018 WL 704849, at *4 (D.Md. Feb. 2, 2018) (quoting CareToLive

v. FDA, 631 F.3d 336, 341–42 (6th Cir. 2011)). Further, the request must contain a reasonable description of records, 5 U.S.C. § 552(a)(3)(A), so that an agency employee could locate responsive material "with a reasonable amount of effort." Moore v. Fed. Bur. of Investig., 283 F.App'x 397, 398 (7th Cir. 2008) (quoting Marks v. U.S. Dep't of Just., 578 F.2d 261, 263 (9th Cir. 1978)). Some federal courts have held that requests for "all documents 'relating to'" a subject are overbroad, and that they "unfairly place[] the onus of non-production on the recipient of the request and not where it belongs—upon the [requester]." James Madison Project v. C.I.A., No. 1:08CV1323(GBL), 2009 WL 2777961, at *4 (E.D.Va. Aug. 31, 2009).

Here, Bahrampour broadly asks for any records or information "relating to or relevant to" five different categories, none of which appear to relate to NSA's mission or work. (See Jan. 10, 2023 Letter at 65 (explaining that "[s]tudying the biological effects of electromagnetic radiation and its environmental impact do not fall within the primary mission set of NSA as it endeavors to collect and disseminate foreign intelligence information.")). This vague language does not reasonably describe the records sought. See James Madison Project, 2009 WL 2777961, at *4 (stating that vague language like "relating to" made for an onerous, overbroad request). In her uncontroverted Affadavit, Kiyosaki credibly explains that despite extensive communications with Bahrampour to attempt to narrow his request, he only added a temporal restriction of ten years. (Kiyosaki Aff. ¶ 49). This restriction was insufficient to allow NSA employees to perform a reasonable search. (Id.). The Court affords substantial weight to the Affidavit, and Bahrampour provides no controverting evidence—only his belief that responsive documents exist. (See 1st Opp'n

12

at 34–36). Because a plaintiff's belief "that there are other documents he is entitled to . . . is inadequate to withstand a motion for summary judgment" without additional evidence, Goldner, 293 F.Supp.3d at 544, the Court finds that there is no outstanding issue of material fact and NSA is entitled to summary judgment on this issue as a matter of law.

In an effort to avoid this result, Bahrampour argues that NSA exhibited bad faith because it originally informed him that it located a responsive record, but then provided nothing. (See 1st Opp'n at 33–34). Kiyosaki explains that the NSA could not release the document because the Office of the General Counsel found that it did not originate with, and was not classified by, NSA, so it sent the documentation to the proper agency, the DIA, for review. (Kiyosaki Aff. ¶ 36). The Court finds no bad faith here. Rather, NSA exhibited a willingness to cooperate with Bahrampour through its many letters, but Bahrampour refused to clarify or narrow his requests beyond a temporal restriction. See Ferri v. U.S. Dep't of Just., 573 F.Supp. 852,859 n.13 (W.D.Pa. 1983) (finding no bad faith by agency when it wrote two letters to plaintiff to inform him that additional information was necessary and the government was willing to cooperate with a more specific request).

### III.   CONCLUSION

For the foregoing reasons, the Court will grant NSA's Motion for Summary Judgment. (ECF No. 47). A separate Order follows.

Entered this 7th day of February, 2024.

                                                     /s/
                                    George L. Russell, III
                                    United States District Judge